IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ANTONIO MENDEZ, JR.,<br><br>     Petitioner,<br><br><br>  vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | **ORDER AND<br>MEMORANDUM DECISION<br>DENYING MOTION TO VACATE, SET<br>ASIDE OR CORRECT SENTENCE<br>UNDER 28 U.S.C. § 2255**<br><br>**Civil Case No. 1:14-CV-31-TC**<br><br>Criminal Case No. 1:12-CR-28-002-TC |

Antonio Mendez, Jr. has filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255.  In April 2012, Mr. Mendez was indicted in United States v. Mendez-Moreno et al., Criminal Case No. 1:12-CR-28-TC (D. Utah), with one count of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine.  Mr. Mendez pled guilty to that charge, and the court sentenced him to a minimum mandatory sentence of ten years.  He now seeks a court order modifying his sentence, contending that he received ineffective assistance of counsel at the plea and sentencing stages of his case, that his guilty plea was involuntary, and that the United States breached the plea agreement.  For the reasons set forth below, the court denies Mr. Mendez's motion and dismisses his petition.[1]

---

[1]The court denies Mr. Mendez's request for a hearing because his conclusory allegations do not warrant a hearing.  See Rules Governing Section 2255 Proceedings at Rule 4(b) (requiring court to dismiss motion if the petitioner plainly is not entitled to relief), Rule 8(a) (allowing court, if motion is not dismissed, to consider whether an evidentiary hearing is warranted).

## FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2012, Mr. Mendez and his father, Antonio Mendez-Moreno Sr., were arrested during a drug deal as they attempted to sell methamphetamine. Each man was indicted in the District of Utah and charged with one count of Possession With Intent to Distribute 500 grams or more of a mixture or substance containing methamphetamine. That charge, brought under 21 U.S.C. § 841(a)(1), carries a mandatory minimum sentence of ten years (120 months). The basis for that minimum mandatory sentence is the quantity and type of drug involved in the distribution charge. See 21 U.S.C. § 841(b)(1)(A)(viii) (setting penalty for possession with intent to distribute "500 grams or more of a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers" to fall within at the range of ten years to life).

On April 29, 2013, Mr. Mendez pled guilty to the charge after signing a Statement By Defendant in Advance of Plea of Guilty [hereinafter "Plea Agreement"]. (See Doc. No. 104 in Case No. 1:12-cr-28-TC.) In exchange for his guilty plea, the United States agreed to recommend a sentence of 120 months (the mandatory minimum) to the sentencing court. (Id. at ¶ 12.) The United States did not agree to any other terms or conditions.

In the Plea Agreement, Mr. Mendez made the following representations:

1. As part of this agreement with the United States, I intend to plead guilty to Count 1 of the Indictment. My attorney has explained the nature of the charges against me, and I have had an opportunity to discuss the nature of the charges with my attorney. I understand the charges and what the government is required to prove in order to convict me.

    (a) The elements of Count 1, Possession of Methamphetamine with Intent to Distribute are: 1) Knowing possession of a mixture or substance containing a detectible quantity of methamphetamine; 2) Intent to distribute the methamphetamine; 3) Quantity in excess of 500 grams.

    (b) I know that the maximum possible penalty provided by law for Count 1 of the

2

Indictment, Possession of Methamphetamine with Intent to Distribute, a violation of 21 U.S.C. § 841(a)(1), is a mandatory minimum term of imprisonment of 10 years, up to life imprisonment, a fine of $4 million, and a term of supervised release of up to 5 years. I understand that if the supervised release term is violated, I can be returned to prison for the length of time provided in 18 U.S.C. § 3583(e)(3). Additionally, I know the court is required to impose an assessment in the amount of $100 for each offense of conviction, pursuant to 18 U.S.C. § 3013.

. . .

11. I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea and for calculating the sentence in my case:

On March 5, 2012, members of the Weber Morgan Narcotics Strike Force searched a vehicle I was in near Layton, Utah. During the course of the search, they located more than 500 grams of a mixture containing methamphetamine. I acknowledge that I was in possession of the methamphetamine, and that it was my intention to distribute the methamphetamine.

(Plea Agreement ¶¶ 1, 11.)

After Mr. Mendez pled guilty, the United States Probation Office issued a Pre-Sentence Report (PSR) for Mr. Mendez.  According to the PSR, "Laboratory reports confirmed a total of 864.4 grams of methamphetamine actual was seized by police."  (PSR at p. 3 ¶ 11.)  The PSR also identified Mr. Mendez as "a minor participant" in the crime for which he was being sentenced.  Based on the results of the presentence investigation and the contours of the advisory United States Sentencing Guidelines (U.S.S.G.), the probation office calculated a sentence guideline range of 120 to 137 months and recommended a sentence of 120 months.  (Id. at p. 13 ¶ 58.)[2]

---

[2]In the PSR, the probation officer noted that the applicable guideline range for Mr. Mendez would have been 110 to 137 months, but because the crime came with a mandatory minimum sentence of 120 months, the recommendation could not go below 120 months.  (PSR at p. 13 ¶ 58.)

Mr. Mendez's attorney filed an objection to the PSR.  (<u>See</u> Position of the Def. With Respect to Sentencing Factors (Doc. 121 in 1:12cr28).)  Mr. Mendez's counsel successfully challenged the probation office's initial suggestion that Mr. Mendez was not a minor participant in the crime.[3]  He also argued that Mr. Mendez was eligible for a decrease in his "offense level" under the U.S.S.G. because he was less culpable than his co-defendant, and he challenged the probation office's conclusion that "[t]here is no information to suggest that a departure, either upward or downward is warranted in this case."  (PSR Pt. E, ¶ 76.)  The attorney argued that Mr. Mendez played a mitigated role:  "Defendant believes that the lighter treatment of the co-defendant's [sic] in this case would indicate that the interest of justice would merit a downward departure."  (Position of the Def. With Respect to Sentencing Factors (Docket No. 121 in 1:12cr28) at 2.)  Mr. Mendez's attorney was referring to the fact that Co-Defendant Antonio Mendez-Moreno Sr. (Mr. Mendez's father) was the primary actor in the transaction, that Mr. Mendez was a minor participant, and that the father was facing a sentence of up to three years.  Mr. Mendez's attorney argued that imposing a ten-year sentence on a minor participant while imposing a three-year sentence on a major participant in the same crime would be inequitable.

Before sentencing, Mr. Mendez's attorney also filed a Sentencing Memorandum (Doc. No. 122 in 1:12cr28), in which he requested that the court sentence Mr. Mendez to ten years in federal prison (the minimum mandatory) rather than impose a sentence at the higher end of the

---

[3]The court uses the term "initial" because the PSR in the court's possession <u>does</u> list Mr. Mendez as a minor participant.  Because his attorney objected to a PSR that did <u>not</u> grant minor participant status, there must have been an earlier, less favorable, PSR.

U.S.S.G. range (137 months) calculated by the probation office.[4]  He noted that the United States "has recommended and does not oppose . . . [120 months] for the sentencing in this case."  (Id. at 7.)

And at the sentencing hearing the United States did in fact recommend a sentence of 120 months.[5]  The court accepted the United States' recommendation, granted Mr. Mendez's request, and sentenced Mr. Mendez to 120 months.

Mr. Mendez now brings a motion under § 2255 and asks the court to vacate his guilty plea and the sentence imposed, or at least reduce his sentence.

## ANALYSIS

Because Mr. Mendez is proceeding *pro se*, the court construes his pleadings liberally. United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994).  But the court may not act as an advocate for a *pro se* litigant.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**1.     Claim of Ineffective Assistance of Counsel During Pleading and Sentencing Phases**

**a.     Applicable Standard**

Mr. Mendez claims that he received ineffective assistance of counsel during the pleading and sentencing phases.  To succeed on his claim, Mr. Mendez must establish facts that satisfy the two prongs of Strickland v. Washington, 466 U.S. 668 (1984).

---

[4]Mr. Mendez, in his October 15, 2013 Sentencing Memorandum, represents that the probation office calculated an advisory guideline range of 188 to 235 months.  (See Doc. No. 122 in 1:12cr28 at p. 3.)  But the only PSR the court has on record shows a recommendation of 120 to 137 months.  Any discrepancy that exists does not change the fact that Mr. Mendez faced a mandatory minimum sentence and that is what he received.

[5]The minute entry for that proceeding noted that "[t]he parties advise the court that they have had sufficient time to review and make corrections, if necessary, to the presentence report." (Oct. 16, 2013 Minute Entry (Doc. No. 124) in 1:12cr28.)

First, Mr. Mendez must show that his former attorney's performance relating to his guilty plea and sentencing was deficient.  Id. at 687.  An attorney's performance is "deficient" if "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.

Second, he must show that he suffered prejudice as a result.  Id.  To establish prejudice, Mr. Mendez must show that but for his attorney's alleged errors, the outcome of the plea and sentencing proceedings would have been different.  That is, he has the burden to show that counsel errors actually had an adverse effect on the entry of his plea and his sentencing.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  Id. at 693.  Instead, Mr. Mendez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694 (emphasis added).

Throughout its analysis, the court must presume that counsel's actions were reasonable and that he provided effective assistance to his client.  Id. at 689.  Mr. Mendez has the burden to overcome that strong presumption.  United States v. Kennedy, 225 F.3d 1187, 1197 (10th Cir. 2000).

**b.      Guilty Plea**

In an ineffective assistance claim challenging a guilty plea, the defendant must "'show a reasonable probability that the end result of the criminal process would have been more favorable' to the defendant in the absence of counsel's deficiencies."  United States v. Moya, 676 F.3d 1211, 1214 (10th Cir. 2012) (quoting Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399, 1409

(2012)).  To do that, Mr. Mendez must cite to evidence to establish such a probability.  To the

extent he contends that he would not have pleaded guilty if he had been given certain

information, his allegations are conclusory and fall short of the evidentiary standard.

"[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a

valid claim under § 2255."  United States v. Moya, 676 F.3d 1211, 1213 (10th Cir. 2012); see

also United States v. Fisher, 38 F.3d 1144, 1147 ("[W]e are not required to fashion Defendant's

arguments for him where his allegations are merely conclusory in nature and without supporting

factual averments.") (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

      To the extent he contends that he would have received a more favorable plea deal but for

his attorney's performance, Mr. Mendez's argument also fails.  Mr. Mendez was facing a

minimum mandatory sentence of 120 months, and no amount of negotiation would have changed

that situation.  In fact, he faced the possibility of receiving an even lengthier sentence (the

guideline range went up to 137 months), but his attorney successfully negotiated with the United

States to recommend the minimum 120 months.

      Mr. Mendez also unsuccessfully contends that his counsel did not properly negotiate to

establish the correct amount of drugs attributable to him and so, presumably, did not obtain a

more favorable agreement from the United States.  As noted above, the amount of drugs affects

the length of the minimum mandatory sentence under 21 U.S.C. § 841.  Not only does Mr.

Mendez fail to suggest the "proper" amount of drugs (much less provide evidence to support the

unnamed amount), but the PSR unequivocally states that "[l]aboratory reports confirmed a total

of 864.4 grams of methamphetamine actual was seized by police."  (PSR at p. 3 ¶ 11.)  Mr.

Mendez offers no evidence to dispute that fact.  Nothing in the record indicates that Mr.

Mendez's attorney had any basis for "negotiating" the amount of drugs attributable to Mr. Mendez.

Mr. Mendez has not met his burden to show that his counsel's actions during the plea stage prejudiced him or that the results would have been different but for his counsel's alleged deficiencies.

> c.   **Sentencing**

Mr. Mendez claims that he received ineffective assistance of counsel during the sentencing phase.  The standard under Strickland applies here as well.

To support his claim that his counsel's ineffective assistance caused the court to impose an inappropriate sentence, Mr. Mendez contends that his attorney failed to challenge the drug amount, failed to rebut the PSR, failed to request a "safety valve" downward departure, and failed to raise a breach of plea agreement.  None of his contentions has merit.

First, as noted above, his challenge to the drug amount is not supported by any evidence.

Second, the record shows that his attorney did file papers to rebut the PSR.  It appears that, due to the attorney's objection, the probation office reduced Mr. Mendez's offense level.[6] His counsel also raised a sentence disparity issue.  Even if the court accepted the merit of Mr. Mendez's sentencing disparity argument, the court's (and counsel's) hands were tied.  Mr. Mendez was facing a minimum mandatory sentence and the only way he could receive a downward departure was through application of the "safety valve" exception to mandatory minimum sentencing laws set forth at 18 U.S.C. § 3553(f).

---

[6]This, of course, did not provide any substantive benefit because a reduced offense level did not change the minimum mandatory sentence.

But there was no factual or legal basis for his attorney to request a safety valve downward departure. Mr. Mendez was not eligible for a "safety valve" sentence reduction because his criminal history, which included felony drug offenses, disqualified him. A defendant who has "more than 1 criminal history point, as determined under the sentencing guidelines," may not avoid the mandatory minimum sentence Congress imposed. See 18 U.S.C. § 3553(f)(1). Mr. Mendez had a criminal history of 9. (PSR at p. 8 ¶ 36.) His attorney could not change that fact.

Finally, as noted below, Mr. Mendez does not present any evidence that the United States breached the plea agreement. Accordingly, there was no issue for his attorney to raise.

For all of the foregoing reasons, the court finds that Mr. Mendez's attorney's representation of Mr. Mendez during the sentencing phase was not deficient.

## 2.      Claim of Involuntary Guilty Plea

Mr. Mendez contends that his attorney coerced him into signing "the plea agreement that he did not want." (Supplemental Mem. (Doc. No. 2) at 1.) But he does not articulate any facts to develop his claim. Instead, he provides conclusory statements, which are insufficient to support a claim under § 2255. Moya, 676 F.3d at 1213.

## 4.      Alleged Breach of the Plea Agreement

The only thing the United States agreed to do in the Plea Agreement was recommend to the court that Mr. Mendez receive the mandatory minimum and nothing more. The United States did that, and even if, for the sake of argument, the United States did not advocate for a 120-month sentence, Mr. Mendez received that sentence (the mandatory minimum) and so he was not harmed by any alleged failure on the part of the United States. There is no evidence of a breach, and the court finds that Mr. Mendez's claim of breach has no merit.

9

## ORDER

For the reasons stated above, the court DENIES Mr. Mendez's motion and hereby

DISMISSES his petition.

SO ORDERED this 30th day of October, 2014.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge